TRENTON STREET RAILWAY COMPANY, petitioner and
respondent,

*v.*

UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.,
appellants.

[Filed June 18th, 1900.]

1. Under the act of March 22d, 1895 (*Gen. Stat. p. 2717*), which au-
thorizes the chancellor to define the mode in which one railroad may cross
another, it is essential to the jurisdiction of the chancellor that the *lawful*
route of the petitioning company should cross the line of railroad belong-
ing to the other company.

2. The powers delegated by the eighth and eleventh sections of the act
of April 6th, 1886 (*Gen. Stat. p. 3216* ¶ *55, 59*), are confined to com-
panies incorporated under that act, and companies having special charters,
whose tracks have been located, their lessees and assigns.

On appeal from a decree advised by Vice-Chancellor Reed,
who delivered the following conclusions:

This is not the first time this matter has been before this
court, but it is the first time the specific grounds for challenging
the right of the petitioners to cross have been presented to this
court. The Trenton Street Railway Company is a corporation
composed of several original companies. The first is the Tren-
ton Horse Railway Company, incorporated by special charter
in 1859. *P. L. of 1859 p. 266.* The next is the City Railway
Company, formed under articles of incorporation filed December
9th, 1875, under the general railroad law. The next is the
Hamilton Township Street Railway Company, formed under
articles filed September 12th, 1890, under the act of April 6th,
1886. And the next is the South Clinton Avenue and Broad
Street Railway Company, formed under articles filed October
28th, 1890, under the same act. All these companies were con-
solidated under the terms of an agreement dated September

21st, 1891, and filed September 30th, 1891, under the name of the Trenton Passenger Railway Company, Consolidated, under acts of February 21st, 1888, and April 16th, 1891. After this the Pennington Avenue Passenger Railway Company was formed under articles filed September 14th, 1897; the Mulberry Street Railway, under articles filed on the same day, and the Ewing Passenger Railway Company, under articles filed February 25th, 1898, all under the act of April 6th, 1886. The consolidated company, viz., the Trenton Passenger Railway Company, Consolidated, formed a new consolidation with the three last-named corporations, by a new consolidated agreement, dated January 28th, and filed on the 29th, 1898, under the name of the Trenton Street Railway Company, which is the present petitioner. It appears that at the time of the first consolidation agreement the tracks of the companies so consolidated, other than the City Railway Company, ran from the easterly side of Trenton, through Clinton street to Stanton street, and through Stanton street to South Broad street. The line of the City Railway Company ran down Broad street and stopped at Division street, four blocks north of the point where Stanton street enters Broad street. Ordinances were passed and accepted authorizing the laying of tracks and the use of electricity as motive power by each of the said roads. The first consolidated company built its road down Broad street to the line dividing the city of Trenton from Hamilton township, and seems also to have connected by a short track the terminus of the old city road at Division street with the continuation of the roads from Stanton street. Then, under an ordinance of the township committee of Hamilton township, passed May 12th, 1893, the consolidated company extended its line to the toll-house at Broad Street Park, on Broad street. Then, under an ordinance of the same township committee, passed March 8th, 1894, the same company extended its road from the toll-house to the White Horse hotel. Then the same committee, on December 8th, 1898, passed an ordinance authorizing the last-named consolidated company to extend its road from White Horse to Yardville. This ordinance was accepted December 23d, 1898, and the acceptance filed January 3d, 1899.

If the consolidated road was a corporation made up by the merger of the preceding existing roads, then the consolidation road possessed all the privileges of each company consolidated. *Gen. Stat. p. 3226 ¶ 79.* Nor does it matter whether the corporation was *de jure* or *de facto.* A *de facto* corporation may exercise the power of eminent domain. *2 Wood Railw. L. 819.* In *National Docks Railroad Co.* v. *Central Railroad Co., 5 Stew. Eq. 755,* the court of appeals held that this court could not inquire into the *de jure* existence of a corporation, and enjoin it from crossing land or tracks of another road because of its want of power as a *de jure* corporation, if it were a corporation in fact. The test to be applied in ascertaining whether a corporation has a *de facto* existence is—*first;* the existence of a law under which a corporation might be formed; *second,* an effort in good faith to organize a corporation under the law, and *third,* the assumption and exercise of corporate functions as a result of such effort. *Vanneman* v. *Young, 23 Vr. 403.* This test is applicable to corporations formed by consolidations. *7 Jones Corp. ¶ 8251.*

It is insisted that one of the parties to the first consolidation agreement was neither a corporation *de jure* nor *de facto,* and therefore the attempted consolidation was null. It is admitted that the City Railroad Company was incorporated under the general railway act. It is insisted that a street railroad cannot be incorporated under that act, and therefore the city railway is not a *de facto* street railway, because there was no statute then under which a street railway could be incorporated. It is also insisted that if it can be regarded as a *de facto* incorporation, it must be as a steam road, and that a steam road is not within the class covered by the consolidation acts of 1888 (*Gen. Stat. p. 3225*), and of 1891 (*Gen. Stat. p. 3229*). It is contended that the city railway was incapable of becoming a party to the first consolidation agreement, and therefore that that agreement is void and vulnerable to collateral attack. It is further contended that if the first consolidation was ineffectual to create a new corporation, it follows that the second consolidation, to which the pretended new corporation is a party, must, upon the same reasoning, be regarded as a nullity. It is true that

it was decided in *Railway Co.* v. *Flanagan, 28 Vr. 236; S. C., 28 Vr. 696,* that a supplement to the general railroad and canal act limiting the time in which actions for injuries could be brought did not apply to street railways. The street railways in question in that case were, as I understand it, organized as such, and the question is whether the legislation applied to a class of corporations not organized under the general railroad law. The question now presented seems to me to be quite different from that. The query here is whether a corporation formed under the general railroad act, to do most of the things which a railroad does, but some that it does not, can be regarded as a corporation at all. The functions of the two railroads are so similar that it has been held in the State of New York that a street railroad could be formed under their general railroad act. *In re Washington St., A. & P. R. Co., 115 N. Y. 442.* Where the purposes of a corporation are partly within and partly without the law, it may have a *de facto* or *de jure* existence, as the case may be, and it will simply be incapable of exercising the unauthorized powers. *Heck* v. *McEwen, 12 Lea 97.* Many street railroads in this state have been organized under the general railroad act. These, in my judgment, after years of use as such must be regarded as corporations in fact. But, if so, are they included within the consolidation acts which the petitioner invokes? I am inclined to think they are. The city railway was in fact a street railroad. It operated its cars in the streets with the usual motive power, and in the manner which distinguishes a street railroad from a steam railroad. It will be observable, also, that the supplement of 1893 to the act of 1891, includes "any company owning or operating a railroad operated as a street railway." Without deciding this point, but assuming the City Railway Company was incapable of consolidating with another street railway, it does not follow that a new corporation did not spring from the first consolidation agreement. Two of the parties to the agreement, namely, the Hamilton Township Street Railway Company and the South Clinton Avenue and Broad Street Railway Company, both organized under the act of April 6th, 1886, were admittedly empowered to consolidate

with each other.   Suppose that they were not empowered to
treat for the property of the City Railroad Company, and so far
their contract was *ultra vires,* yet I do not see how this fact
would impair the effort by the two companies to consolidate
under a valid general law, and form a new corporation, the
franchise of which they have since used.   It may well be that
the stockholders of either company could have stopped the execu-
tion of the contract for consolidation, but I am unable to see
how a third party can question the existence of the new corpora-
tion.   It follows that if the new corporation had even a *de facto*
existence, the second consolidation agreement was valid, and
from it sprung another corporation, having the power of each
of the constituent members of both consolidations, including the
power to extend tracks.

In regard to the point that the consolidation acts do not pro-
vide for the creation of a new and distinct corporation, it is
admitted that the act of 1888 (*P. L. of 1888 p. 74*) in express
terms so provides.   But it is insisted that this act empowers
horse, but not electric roads, to consolidate; and it is further
insisted that the act of 1891, which applies to street railroads
generally, contains no provision for the creation of a new cor-
poration.   The act of 1891 authorizes a street railway company
to merge and consolidate its corporate franchises and other
property with that of any other horse or street railway company.
It provides that the merger may be effected in the same manner
provided by statute for the merger and consolidation of horse
railway companies.   The last provision is attacked upon the
ground that it makes an already existing law a part of it by
reference.   The reference to the method of procedure in effect-
ing a consolidation was not objectionable.   *Campbell* v. *Board,
18 Vr. 347; De Camp* v. *Railroad Co., 18 Vr. 43, 49.*   The
method of procedure prescribed by the act of 1888 implies the
erection of a new corporation.   The agreement which is to be
submitted to the stockholders of each of the companies contains
the name of the new corporation, the number of shares of the
new company, and the manner of converting the stock of the
old into stock of the new corporation.   Without stopping to
consider whether the act of 1888 applied to all street railways,

I am of the opinion that the act of 1891 was a perfect act. It put all street railroads within the class of roads included within the general railroad act of 1888, and the reference to the provisions of the last act was sufficient without re-enactment of nearly the whole body of that statute. I will advise a decree in the same form as the one last advised.

*Mr. Alan H. Strong* and *Mr. Charles E. Gummere,* for the appellants.

*Mr. Robert S. Woodruff* and *Mr. John H. Backes,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

The Trenton Street Railway Company presented to the chancellor a petition, asking him to define the mode in which the company might cross the railroad of the United New Jersey Railroad and Canal Company, near the village of Yardville, in the county of Mercer, pursuant to the act of March 22d, 1895. *Gen. Stat. p. 2717.* At the hearing before Vice-Chancellor Reed, counsel for the latter company required proof of the right of the petitioner to cross its tracks, and it appearing that the proposed crossing was part of an extension of the petitioner's railroad beyond its original route, counsel denied the power of the company thus to extend its road. Notwithstanding this objection, the chancellor made a decree defining the mode of crossing, and thereupon the United New Jersey Railroad and Canal Company appeals.

By the language of the act of March 22d, 1895, it is made essential to the jurisdiction of the chancellor that the *route* of the petitioning company should cross the line of railroad of the other company; and by the route here mentioned is certainly intended the lawful route. It was therefore incumbent on the petitioner to show that it had legally laid its route over the appellant's railroad, and, as one of the steps to that end, that

it had lawful power to lay out and construct its proposed ex-tension.

In answer to the same objection made in this court by the appellant, the respondent bases its right on the eighth and eleventh sections (amended ) of "An act to provide for the incorporation of street railway companies, and to regulate the same," approved April 6th, 1886. *Gen. Stat. p. 3216* ¶¶ *55, 59.*

The power delegated by the eighth section is confined to companies incorporated under that act, and the power delegated by the eleventh section is confined to street railway companies whose tracks have been located and whose charters have been duly accepted, their lessees and assigns.

It does not appear that either the petitioner or any of the companies, by consolidation of which it was formed, was incorporated under the act of April 6th, 1886, and therefore the eighth section is not applicable.

The phrase employed to describe the class of corporations embraced in the eleventh section, "whose charter has been duly accepted," is not entirely unambiguous, but we think it denotes with sufficient clearness those that exist under special charters.

The expressions used in our street railway statutes to indicate the document by which a corporation is formed under the general laws are, "articles of association," "articles of incorporation," "certificate of incorporation," "certificate of organization." Such an instrument would not be called, in the ordinary use of words, "a charter accepted." These terms, in their usual meaning, signify, under our system of government, a special act of the legislature offering corporate existence and franchises to designated individuals, who thereupon accept the offer. This is the sense that we think it bears in the eleventh section of this statute.

The petitioning company did not show that either itself or any of its constituent corporations had thus received and accepted a charter. Hence we cannot regard it as being within the purview of the eleventh section.

The petitioner's claim of right to extend its route seems, therefore, to be unsupported, and for that reason the decree appealed from must be reversed.

*For reversal*—The Chancellor, Chief-Justice, Van Syckel, Dixon, Garrison, Lippincott, Gummere, Ludlow, Hendrickson, Adams, Vredenburgh, Voorhees.—12.

*For affirmance*—None.